UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

KATHRYN L. PRY, bankruptcy trustee                                     PLAINTIFF
On behalf of Bryan Dalton

v.                                                              CIVIL ACTION NO. 3:11-CV-00373-CRS

PATRICK R. DONAHOE, Postmaster General                       DEFENDANT

Memorandum Opinion

I.       Introduction

Kathryn L. Pry, a bankruptcy trustee, filed an amended complaint against the United States Postal Service ("Postal Service") on behalf of Bryan Dalton. Am. Compl. 1, ECF No. 26. Dalton's amended complaint alleges that the Postal Service engaged in unlawful disability discrimination and retaliation, *inter alia*. *See id.* at 2.

The United States moves for summary judgment on Dalton's claims. Def.'s Mot. Summ. J., ECF No. 48. The Court will grant summary judgment to the United States.

II.      Legal standard

A party moving for summary judgment must show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Court must determine whether there is a genuine issue for trial. *Anderson v. Liberty Lobby*, 477 U.S. 242, 249 (1986). A genuine issue for trial exists when "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Id.*

The Court must draw all factual inferences in favor of the nonmoving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Ultimately,

> [T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to

1

make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial.

*Celotex Corp. v. Catrett*, 477 U.S. 317, 322 – 23 (1986).

III.  Undisputed facts

In 1996, following his honorable discharge from the U.S. Navy, Dalton began working at the Postal Service as a mail processing clerk at the Louisville Processing and Distribution Center. *See* Dalton Dep. 8, ECF No. 49-1. A mail processing clerk sorts and separates mail by zip code. *See id.* During the relevant time period, Dalton's supervisor was Barron Purifoy.

Dalton has a fused left ankle, a torn meniscus in his right ankle, and a bulging disk in his back. *Id.* at 10. Between 1994 and 2006, he had three surgeries on the left ankle, and it was fused in 2009 after he left the Postal Service. *Id.* at 11. He walks with a limp. He also has "bipolar schizophrenic disease." *Id.* at 12.

In 2008, Dalton received two "No Time Off Letters" for his attendance issues. The No Time Off Letters say, "[this is a] letter of warning relative to the work deficiency described below: Charge 1 – **You are charged with failing to meet the requirements of your position because of your continuing pattern of unscheduled absences, and your overall unsatisfactory attendance**." Rep. Investig. ("ROI") 497, 500, ECF No. 49-1.

Dalton was absent from work on March 15, 2009. On March 16, Purifoy met with Dalton, instructing him to bring in documentation regarding his absences. Two days later, Purifoy met with Dalton again, for failure to follow instructions. Dalton walked out of both interviews.

Dalton testified that on March 22, Purifoy approached him about his need to provide documentation for his absences, and Purifoy said, "I know where you live." Dalton Dep. 27 –

2

28. Darryl Ayo, Manager of Distribution Operations, conducted an internal investigation regarding what Dalton called Purifoy's "threat." Ayo concluded that Purifoy had not threatened Dalton. ROI 191. The Postal Service did not follow-up on Ayo's investigation.

On May 13, 2009, Jesse Parker, Supervisor of Distribution Operations, drafted Dalton's third No Time Off Letter for attendance issues.[1] On May 23, 2009, Parker tried to meet with Dalton to issue the third No Time Off Letter. Parker testified that Dalton said he did not want to meet with Parker because he "would have had to hurt" anyone who confronted him with his attendance issues, and he "didn't want to choke" Parker. ROI 174; *see also*, ROI 281.

Parker feared that Dalton might engage in violence if presented with the third No Time Off Letter in person. He sent Dalton home. Fearing that Dalton might engage in violence if given the third No Time Off Letter in person, the Postal Service sent the third No Time Off Letter to Dalton's home by certified mail.

The third No Time Off Letter says, "THIS IS YOUR FINAL WARNING PRIOR TO DISCHARGE" and "While this suspension does not result in a loss of time or pay, it is equivalent to and is of the same degree of seriousness as a time-off suspension." ROI 348. He did not receive a dock in pay or a reduction in benefits. Dalton Dep. 37. Though Dalton's filings are unclear as to whether he resigned,[2] after May 2009, Dalton did not return to work at

---

[1] The record is unclear as to how many days Dalton missed work in spring 2009 without documentation for FMLA leave. He has not alleged that the Postal Service violated the FMLA in requesting additional documentation regarding the absences. The record is clear that Dalton had a history of attendance issues. He does not dispute that in 2008, he received two No Time Off Letters regarding his attendance. *See* Pl.'s Resp. Opp. Summ. J. 5, ECF No. 54.

[2] *Compare, e.g.*, Am. Compl. ¶ 6 ("He holds a position with Defendant Agency."), *with*, Pl.'s Resp. 9 (characterizing Postal Service's treatment of Dalton as "termination"), *and*, Dalton Aff. ¶ 8, ECF No. 54-1 ("As a result of the harassment by postal officials, Affiant chose to resign his position with the United States Postal Service on or about May 13, 2009.").

the Postal Service. Dalton Dep. 36; *see also*, Dalton Test., ROI 18, 54 (characterizing decision not to return to work as a "medical retirement" for which he receives payments).

On June 22, 2009, Dalton filed a discrimination complaint with the Postal Service's Equal Employment Office. On April 21, 2011, the Equal Employment Office issued Dalton a notice of final action, finding that Dalton had not shown he was the victim of illegal discrimination. ROI 1.

Dalton's amended complaint alleges disability discrimination and retaliation under the Rehabilitation Act. Also, he alleges that the Postal Service violated Title VII of the Civil Rights Act of 1964 and the Age Discrimination in Employment Act by discriminating against him on the basis of his race, sex, and age. Am. Compl. ¶ 1. In his deposition, Dalton denied that he was claiming discrimination on the basis of his race, gender, and age. Dalton Dep. 10. He has, therefore, abandoned those claims. *Cf. Brown v. VHS of Mich., Inc.*, 545 F.App'x 368, 372 (6th Cir. 2013) ("This Court's jurisprudence on abandonment of claims is clear: a plaintiff is deemed to have abandoned a claim when a plaintiff fails to address it in response to a motion for summary judgment.").

Thus, Dalton's remaining claims are for disability discrimination and unlawful retaliation. The Court will address each in turn.

IV.   Dalton's disability discrimination claim

The Rehabilitation Act prohibits the Postal Service from discriminating against a qualified individual with a disability "solely by reason of her or his disability." 29 U.S.C. § 794(a). In employment discrimination cases arising under the Rehabilitation Act, the Court applies the same standards as it would in employment cases involving Title I of the Americans with Disabilities Act. *See* 29 U.S.C. § 794(d). "The ADA and the Rehabilitation Act both prohibit discrimination against the disabled—but the Rehabilitation Act, unlike the ADA,

4

expressly prohibits discrimination *solely* on the basis of disability." *Lee v. City of Columbus, Oh.*, 636 F.3d 245, 250 (6th Cir. 2011).

    A. <u>Whether Dalton has produced direct evidence of disability discrimination</u>

  Direct evidence is evidence that requires the conclusion that the unlawful discrimination was the "but for" cause of the employment decision. *Demyanovich v. Cadon Plating & Coatings, L.L.C.*, 747 F.3d 419, 433 (6th Cir. 2014).

  Dalton offers the following as direct evidence of disability discrimination: Purifoy called Dalton a "gimp;"[3] Purifoy told Dalton he would not be able to transfer departments; and "Mr. Purifoy forced Mr. Dalton to work the machines alone causing him great pain because of his disability." *See* Pl.'s Mem. 8 – 9.[4]

  Taken together, even if the Court assumed that Dalton suffered an adverse employment action, *see* discussion *infra* Part IV(B)(1), this evidence does not require the conclusion that disability discrimination was the "but for" cause of the employment decision.

    B. <u>Whether Dalton has met his prima facie burden on his discrimination claim</u>

  If the plaintiff does not offer direct evidence of discrimination, the plaintiff has the burden of proving a prima facie case of discrimination under the *McDonnell Douglas* burden-shifting framework. *Demyanovich*, 747 F.3d at 433; *see also*, *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)).

---

[3] In Dalton's response, he says, "Because of Mr. Dalton's limp, Mr. Purifoy commonly referred to Mr. Dalton as "gimp" and "stumpy." Pl.'s Resp. 1 (citing ROI 87). Willard Godbey worked as a mail clerk with Dalton under Purifoy's supervision. Godbey did not testify that Purifoy used the word "stumpy" to describe Dalton. *See* ROI 107 – 113.

[4] Additionally, he argues that the following statement is direct evidence of discrimination: "Mr. Parker told Mr. Dalton that everyone in management was afraid of him (Mr. Dalton) because of his mental illness." Pl.'s Resp. 8. He offers no record citation for this alleged statement, and the Court need not search the record on his behalf. *See Parsons v. FedEx Corp.*, 360 F.App'x 642, 646 (6th Cir. 2010).

A prima facie case for disability discrimination under the Rehabilitation Act requires the plaintiff show that he or she

> (1) is disabled; (2) otherwise qualified for the job, with or without reasonable accommodation, (3) suffered an adverse employment action, (4) the employer knew or had reason to know of the plaintiff's disability; and (5) the employee was replaced by a nondisabled person or his position remained open.

*See Jones v. Potter*, 488 F.3d 397, 404 (6th Cir. 2007). Additionally, the plaintiff may show the fifth element by "showing that similarly situated non-protected employees were treated more favorably." *Id.*

The United States has not conceded that Dalton is a disabled within the meaning of disability under the Rehabilitation Act. Def.'s Mem. Supp. Mot. Summ. J. 9, ECF No. 48-1. First, the United States argues that Dalton cannot show that he suffered from an adverse employment action. *Id.* at 11. Second, the United States argues that Dalton cannot show that the Postal Service treated similarly-situated employees outside of the protected class more favorably than him. *Id.* The Court will address each in turn.

    1. <u>Whether Dalton suffered an adverse employment action</u>

"An adverse employment action is a 'materially adverse change in the terms or conditions of employment because of [the] employer's conduct.'" (brackets in original) (ellipses omitted). *Talley v. Family Dollar Stores of Ohio, Inc.*, 542 F.3d 1099, 1107 (6th Cir. 2008).

In *McMillian*, the court of appeals upheld a district court's grant of summary judgment to the Postal Service. *McMillian v. Potter*, 130 F.App'x 793, 797 (6th Cir. 2005). The plaintiff received a "proposed letter of warning in lieu of time-off suspension." *Id.* at 794. The court said, "The April 12, 2001 proposed letter of warning in lieu of suspension cannot meet the definition of an adverse employment action." *Id.* at 797.

6

Similarly, Dalton's third No Time Off Letter in lieu of suspension cannot meet the definition of an adverse employment action. Here, Dalton's third No Time Off Letter says the suspension "does not result in a loss of time or pay." ROI 459. Dalton has presented no evidence to suggest that the Postal Service's decision to issue a third No Time Off Letter was a demotion, "material loss of benefits, significantly diminished material responsibilities, or other indices that might be unique to a particular situation." *McMillian*, 130 F.App'x at 796 – 97. Indeed, he testified that he did not receive a dock in pay or any reduction in benefits as a result of the third No Time Off Letter. Dalton Dep. 37.

The Court finds that Dalton has not shown that he suffered an adverse employment action.

### 2. Whether the Post Office treated similarly-situated employees outside Dalton's class more favorably

A similarly-situated employee is an individual who "must have dealt with the same supervisor, have been subject to the same standards, and engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it." *Jones*, 488 F.3d at 405 (internal quotation marks omitted).

Dalton has not offered any evidence of similarly-situated, non-disabled employees whom the Postal Service treated more favorably. Nor has he offered any evidence that the Postal Service replaced him with a non-disabled person or that his position remained open.

The Postal Service points to the discipline history of mail-processing clerks at the Louisville Processing and Distribution Center. *See* ROI 406. Purifoy, Dalton's supervisor, disciplined five other Postal Service employees for poor attendance, and none of those employees had medical impairments. *Id.*

The Court finds that Dalton has not shown that the Postal Service treated a similarly-situated non-disabled employee more favorably than him.

As Dalton has failed to make a showing on two essential elements of his disability discrimination claim, the Court will grant summary judgment to the Postal Service on Dalton's disability discrimination claim. *See Catrett*, 477 U.S. at 322 – 23.

V.  Dalton's retaliation claim

A prima facie case for retaliation requires the plaintiff to show: engagement in a protected activity; that the employer knew of the protected activity; that the employer took adverse employment action; and "there was a causal connection between the protected activity and the adverse action." *A.C. ex rel. J.C. v. Shelby Cnty. Bd. of Educ.*, 711 F.3d 687, 697 (6th Cir. 2013).

As discussed above, Dalton's claim of disability discrimination fails because he has not shown that he suffered an adverse employment action. For the same reason, his claim of retaliation also fails.

The Court will grant summary judgment to the Postal Service on Dalton's retaliation claim.

VI.  Conclusion

The Court will grant summary judgment to the Postal Service on Dalton's claims. The Court will dismiss the amended complaint, with prejudice.

April 18, 2016



Charles R. Simpson III, Senior Judge
United States District Court

8